## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

BRAD SIMPSON                                                    PLAINTIFF

v.                                                   No. 3:23-cv-623-BJB

ANGELA JOHNSON, ET AL.                                        DEFENDANTS

**\*\*\*\***

### MEMORANDUM OPINION & ORDER

Brad Simpson, a *pro se* litigant, filed a sixty-page complaint alleging that his ex-mother-in-law, her lawyer, and several family-court officials conspired to violate his constitutional rights by depriving him of custody of his children. Complaint (DN 1). But it has been more than six months since he has taken any action in this case, and he has ignored the Court's order to respond to several pending motions to dismiss. So the Court grants those motions in part, denies them in part, and dismisses this case for failure to prosecute.

### Allegations

According to the complaint, which the Court must accept as true at this stage, Simpson shared custody of his four children with his ex-wife Holly until her suicide in September 2022. Complaint at 5. At that point he took full custody of the children and moved them to Louisville. *Id.* at 5–6. Shortly thereafter, Darla York—Holly's mother and Simpson's ex-mother-in-law—filed an "emergency motion for grandparent visitation" and "ex parte emergency custody petition" in Jefferson (County) Family Court. *Id.* at 8. Judge Angela Johnson granted York's petition, issuing an "ex parte emergency custody order." *Id.* at 10. What happened next in family court isn't clear from the complaint. Judge Johnson appears to have appointed a guardian ad litem to represent the children, while a different family court judge, Shelley Santry, then awarded "temporary custody" of the children to York. *Id.* at 12–13. Simpson at one point received visitation rights, but they were later suspended for noncompliance with the family court's orders. *Id.* at 20, 22. Much remains unclear: in particular, whether York retains custody over the children, whether Simpson's visitation rights have been restored, and whether any state proceedings remain ongoing.[1]

---

[1] Alongside these allegations about the custody dispute, Simpson also asserts that his "ex wife's death was not simply just a suicide" because "evidence has been made known that contradicts suicide being the cause of death." Complaint at 38. He does not say what this evidence is, or how it relates to his legal claims against the defendants. But he asserts that her death is being used to "cover up" unnamed "crimes that were being committed by law enforcement officers at the expense of the tax payers." *Id.* at 38–39. And he "believe[s]" that

Simpson sued York, her lawyer in the custody proceedings (Claudette Patton), the guardian ad litem (Colin Edmundson), and the family-court judges presiding over the custody proceedings (Johnson and Santry) in November 2023. *Id.* at 2. He asserts that they "conspir[ed] to deprive him of certain protections guaranteed to him by the Fifth Amendment, Sixth Amendment, and Fourteenth Amendment." *Id.* at 4 (cleaned up). The custody proceedings, he argues, infringe his "fundamental liberty interests" in his "children's education, care, custody, and control" because he is "willing and able to resume [his] role as a custodial parent"; they also violate several Kentucky statutes and international agreements. *Id.* at 40–42, 46–56. To remedy these purported harms, he asks this Court to "compel" the state court to "dismiss this [custody] action and return [his daughters]" to his care, to "issue compensatory damages as well as punitive damages," and to award "other injunctive … [and] declaratory relief as this Court deems appropriate and just." *Id.* at 59 (cleaned up).

The family-court judges filed a motion to dismiss on several grounds—most notably the *Rooker-Feldman* doctrine, the domestic-relations exception, and *Younger* abstention. DN 4. The next day, York filed a separate motion that "adopts their well-reasoned arguments for dismissal." DN 5 at 1–2. Simpson never responded to either. And the remaining defendants—York's lawyer in the custody action (Patton) and the guardian ad litem—neither answered nor moved to dismiss. So in April 2024 the Court ordered Simpson to respond to the pending motions and ordered the silent defendants to either answer or move to dismiss. DN 6. The lawyer (Patton) filed a motion to dismiss, contending that Simpson never served her. DN 7. But the guardian ad litem still hasn't responded. Nor has Simpson.

## Jurisdiction

When a plaintiff does not respond to motions to dismiss, the usual result is not granting the unopposed motions but instead dismissing the case for failure to prosecute. *E.g., Von Schoech v. Lowe's Home Improvement, LLC*, No. 5:20-cv-168, 2024 WL 2884577 (W.D. Ky. June 7, 2024). Indeed, the Sixth Circuit has instructed that "a district court cannot grant [a motion to dismiss] simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). Instead, the Court may only grant the motion if it concludes that the moving party met its "initial burden." *Id.* at 454–55. But the motions to dismiss filed in this case raise several jurisdictional arguments. And "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). So the Court confronts as many as five jurisdictional (or quasi-jurisdictional) doctrines implicated by Simpson's complaint and the motions to dismiss: *Rooker-Feldman*, the domestic-relations exception, *Younger* abstention, state sovereign immunity, and judicial immunity.

**1.** York and the family-court judges argue that Simpson's entire suit is barred by the *Rooker-Feldman* doctrine. *See* DN 4-1 at 9–10; DN 5 at 1 (incorporating judges'

York received custody of his children because she is "willingly assisting the police department with their cover up under the disguise of protecting her daughter's image." *Id.*

arguments by reference).  This doctrine recognizes the extremely limited role that Congress has assigned federal trial judges with respect to the review of state-court orders; generally only the Supreme Court may hear appeals from the state courts. *See* 28 U.S.C. § 1257.  Binding precedent prohibits inferior federal courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries. Corp.*, 544 U.S. 280, 284 (2005). To determine whether *Rooker-Feldman* applies, a district court must examine "the source of the injury the plaintiff alleges in the federal complaint" along with "the plaintiff's request for relief." *VanderKodde v. Mary Jane M. Elliot, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020).  "If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *Id.*  If the source of the injury is instead "a third party's actions, then the plaintiff asserts an independent claim," which is not necessarily outside the court's jurisdiction. *Id.*

Some of Simpson's requested relief is plainly barred under *Rooker-Feldman.* Simpson seeks, among other things, an order "[c]ompel[ling] Judge Angela Johnson to cease and desist with her unlawful engagement of this family and dismiss this action and return my daughters…." Complaint at 59.  He asks the Court to declare that two orders—one issued by Judge Johnson and the other issued by Judge Santry—are unconstitutional. *Id.* at 44, 59.  These requests explicitly ask the Court to "review and rejec[t]" the family court's orders, which *Rooker-Feldman* does not allow.  *Exxon*, 544 U.S. at 284.[2]  The principal alleged injury—removal of his children—is a direct and explicit consequence of the Family Court's orders.  After losing in state court, Simpson has asked the federal court to disagree with that decision, hold the state-court orders unconstitutional, and effectively overrule them by issuing a contrary order.

This is the sort of *Rooker-Feldman* question the Courts of Appeals have described as "easy." *Goodman ex. Rel Goodman v. Sipos*, 259 F.3d 1327, 1333 (11th Cir. 2001) (explaining that "an easy case for the application of the *Rooker-Feldman* doctrine" is one where "the primary relief sought … was an injunction preventing enforcement of the state court judgment and returning custody to the aggrieved parent.").  It closely resembles a hypothetical the Sixth Circuit used to illustrate the doctrine's core: "a state court, based purely on state law, terminates a father's

---

[2] It does not matter that the state-court orders may be interlocutory.  "Under *Rooker-Feldman* … federal district courts don't have jurisdiction over appeals of interlocutory state-court orders." *RLR Investments, LLC v. City of Pigeon Forge*, 4 F.4th 380, 396 (6th Cir. 2021).  The term "judgment" doesn't carry its narrowest connotation in this context.  "For the purposes of *Rooker-Feldman*, … a 'judgment' … [is] an investigation, declaration, and enforcement of liabilities as they stood on present or past facts and under laws supposed already to exist." *Id.* at 389 (cleaned up).  This easily covers the orders Simpson asks this Court to review.  They allegedly issued after hearings in which the Family Court found facts and (mis)applied the law.  Complaint at 8–10, 12–15.

parental rights and orders the state to take custody of his son" before "the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent." *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006). In such a case, the father "is complaining of an injury caused by the state judgment and seeking its reversal." *Id.* "This he may not do," the Sixth Circuit explained, "regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments." *Id.*

Not all of Simpson's claims fall so easily under the *Rooker-Feldman* doctrine. He also seeks damages for the removal of children. This isn't entirely the fault of the state-court orders, he says, because York and the guardian ad litem lied to the family-court judges. Complaint at 4, 32–34, 59. These claims—at least in part—"challeng[e] the conduct of the individuals who happened to participate in th[e] [state-court] decision," rather than the decision itself. *Alexander v. Rosen*, 804 F.3d 1203, 1206–07 (6th Cir. 2015). To the extent a plaintiff's "alleged injury did not emerge from the state court judgment," *Rooker-Feldman* "does not apply." *Id.* So Simpson's claims that rest on fraudulent manipulation of state-court proceedings by the non-judge defendants, rather than the claims attacking the proceedings themselves, are not obviously barred by *Rooker-Feldman*.

**2.** What about the related doctrine of *Younger* abstention, which York and the family-court judges also raise? It might bar the entire suit—but only if the proceedings remain ongoing. Named after *Younger v. Harris*, 401 U.S. 37 (1971), this doctrine directs federal courts to avoid deciding cases otherwise within their jurisdiction when doing so would "threate[n] undue interference with state proceedings." *Aaron v. O'Connor*, 914 F .3d 1010, 1016 (6th Cir. 2019) (quotation marks omitted). District courts must abstain when federal litigation would "regulate the day-to-day conduct of state hearings, assess the constitutionality of the procedures used in those hearings, or opine on the merits of the child [custody] determination." *Alexander*, 804 F.3d at 1207 (quotation marks omitted) (collecting Sixth Circuit cases). And even if a plaintiff seeks only damages, which would not directly control the "conduct of state hearings," *id.*, *Younger* still counsels district courts to stay such claims while the state proceedings remain underway, *Nimer v. Litchfield Township Board of Trustee*s, 707 F.3d 699, 700 (6th Cir. 2013).

Simpson asks this Court for both an injunction running against the state-court litigation as well as damages stemming from it. So Sixth Circuit precedent would seemingly require this Court to abstain if proceedings remain ongoing in Family Court. But as noted above, whether they have ended is not clear from the face of Simpson's complaint. So the Court declines to stay or dismiss this litigation under *Younger*.

**3.** Alternatively and relatedly, York and the family-court judges argue that the domestic-relations exception to federal jurisdiction bars this entire suit. That doctrine "deprive[s] federal courts of jurisdiction to adjudicate a claim … for divorce, alimony, or child custody, or … to modify or interpret an existing divorce, alimony, or

child-custody decree." *Alexander*, 804 F.3d at 1205–06 (quotation marks omitted). By asking this Court to "[c]ompel Judge Angela Johnson to … return [his] daughters," Complaint at 59, Simpson appears to demand a new child-custody decree. And in challenging the existing family-court orders, Simpson appears to ask this Court to interpret and modify state custody orders that remain in effect.

At least in diversity cases between citizens of different states, the domestic-relations exception bars such claims. *See McLaughlin v. Cotner*, 193 F.3d 410, 412–13 (6th Cir. 1999) (applying 28 U.S.C. § 1332). But this is a federal-question case (of sorts) arising under § 1331. And the Sixth Circuit has declined to decide whether the exception applies in federal-question cases. *See McGuire v. Tennessee*, No. 22-5614, 2023 WL 9289932, at *2 (6th Cir. March 17, 2023). The Circuits that have weighed in are split. *Id.* (recognizing split between the Seventh Circuit, on the one hand (extending exception to federal-question cases), and the Second, on the other (limiting the exception to diversity suits)).

The answer is largely immaterial to this dispute. *Rooker-Feldman* indisputably bars Simpson's claims for injunctive and declaratory relief against the judicial defendants. The domestic-relations exception would supply an independent basis to refuse that relief assuming it applies. His remaining claims fall outside the exception, however. Although the limitations of the exception's scope aren't entirely clear, Sixth Circuit caselaw makes clear that it does not jurisdictionally bar "requests [to] apply federal law to determine whether the officials overseeing [the plaintiff's] child [custody] case conspired against him." *Alexander*, 804 F.3d at 1206 ("Alexander claims that various state actors violated federal law. The fact that they did so in the course of deciding his child support obligations is immaterial.").

**4.** The doctrine of judicial immunity, according to Judges Johnson and Santry, also bars Simpson's damages claims against them. *See DN 4-1 at 10–11.* That doctrine protects judges from suit based on all "judicial" actions unless the judge acted "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). This "is an immunity from suit, not just from ultimate assessment of damages." *Id.*

The actions that Simpson says these two judges took certainly appear to be judicial in character and within their jurisdiction. So immunity likely stands as a serious barrier to recovery against them. But the doctrine—though it implicates the scope of the judges' jurisdiction in the underlying litigation—does not implicate *this Court's* jurisdiction. Rather, "judicial immunity is an affirmative defense" that "does not divest the court of subject matter jurisdiction." *Mordkofsky v. Calabresi*, 159 F. App'x 938, 939 (11th Cir. 2005). So the Court declines to address the judicial-immunity defense at this stage; to the extent the damages claims aren't barred by the jurisdictional or abstention doctrines discussed above, they fail for other reasons discussed below.

**5.** Still another doctrine bars these same damages claims—at least in part—against Judges Johnson and Santry. "[T]he Eleventh Amendment bars a damages

5

action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). And "a suit against a state official in his or her official capacity is ... a suit against ... the State itself." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). So the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity." *Graham*, 473 U.S. at 169.

Simpson has sued Family Court Judges Johnson and Santry in their individual and official capacities. Complaint at 4. And unlike judicial immunity, Eleventh Amendment immunity is a "true jurisdictional bar" that "once raised as a jurisdictional defect, must be decided before the merits." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). The Johnson/Santry motion to dismiss asserts this defense, Simpson has not responded with any reason it wouldn't apply, and none is apparent to the Court. So the Eleventh Amendment bars the official-capacity damages claims against these two defendants. *See Humphress v. Kentucky*, No. 1:07-cv-126, 2007 WL 4561163, at *2–3 (W.D. Ky. Dec. 21, 2007).

### Dismissal for Failure to Prosecute

The Court appears to have jurisdiction over Simpson's remaining claims for damages against York, the lawyer, the guardian ad litem, and the family-court judges in their individual capacities. But the Court dismisses these claims for failure to prosecute.

"Rule 41(b) of the Federal Rules of Civil Procedure confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Department*, 529 F.3d 731, 736 (6th Cir. 2008). A district judge may dismiss a case for failure to prosecute under Rule 41(b) to "effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Id.* That discretionary decision is guided by four factors:

> "(1) whether the party's failure is due to willfulness, bad faith, or fault;
>
> "(2) whether the adversary was prejudiced by the dismissed party's conduct;
>
> "(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
>
> "(4) whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Id.* at 737.

Three of these factors cut sharply in favor of dismissal. Simpson failed to respond to three motions to dismiss and to the Court's order to respond. For that, he bears fault. *E.g.*, *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364, 366–68 (6th Cir. 1997) (ignoring procedural deadlines and court orders favors dismissal). This unresponsiveness followed a clear warning to Simpson: "If the Plaintiff does not comply with this order, the Court may dismiss this case for failure to prosecute." DN

6.  And the Court will dismiss without prejudice—a "less drastic sanctio[n]" than dismissal with prejudice.  *Schafer*, 529 F.3d at 740–42.  True, "the record contains little, if any, evidence that the defendants were actually prejudiced by [Simpson's] failure to prosecute his claims."  *Id.*  Although the cost, risk, and distraction of responding to litigation related to official court proceedings is hardly trivial; that is of course part of the basis for the judicial immunity discussed above.  Even assuming those concerns don't amount to prejudice, however, this fourth consideration "is outweighed by" the other three.  *Id.*  So the Court dismisses Simpson's remaining claims—without prejudice—for failure to prosecute.  This avoids the need to address the remaining non-jurisdictional arguments offered by the family-court judges (DN 4), York (DN 5), and Patton (DN 7).

## ORDER

The Court grants in part the motions to dismiss filed by the family-court judges (DN 4) and York (DN 5) to the extent Simpson's claims for damages and injunctive relief fall outside this Court's jurisdiction.  To the extent they don't, the Court denies as moot those motions, as well as the motion to dismiss filed by Patton (DN 7), based on Simpson's failure to prosecute.  The Court therefore dismisses all Simpson's claims without prejudice and strikes this case from the active docket.

Benjamin Beaton, District Judge
United States District Court

July 23, 2024